EGE, Respondent, v. CENTERVILLE TELEPHONE EX-CHANGE COMPANY, Appellant.

(147 N. W. 70.)

1. Corporations—Stockholders, Who Are—Stock Subscription—Authority to Execute Note.

Where, after the incorporation of defendant company and after stock therein had been subscribed by persons who, as stockholders thereof, held at least one stockholders' meeting prior to execution of the company's note, **held,** that such subscribers became, by virtue of such subscriptions, stockholders of the corporation, and their authorization of execution of the note was valid as against the corporation.

2. Corporate Powers—"Build, Own, and Control"—Purchase of Telephone Line.

Where a corporation was authorized to "build, own and control" telephone lines, the power to "own" implied the power to purchase, and the purchase of an existing line was within the scope of the purposes for which the corporation was chartered, within the meaning of Civ. Code, Sec. 427, authorizing corporations to purchase and hold such properties as the legitimate purposes of the corporation may require.

3. Corporations—Purchase of Telephone Line—Note in Payment—Authority—Acceptance of Benefit—Ratification.

Where a telephone company executed a note in part payment of purchase price of a telephone line, purchased by the company by unanimous vote of the directors, and the proceeding remained unimpeached for over five years, during which the corporation retained and used the property, the contract of

purchase was thereby ratified, whether originally authorized or not, and plaintiff was entitled to judgment on the note.

(Opinion filed April 27, 1914.   Rehearing pending.)

Appeal from Circuit Court, Turner County.  Hon. ROBERT B. TRIPP, Judge.

Action by W. E. Ege against the Centerville Telephone Exchange Company, to recover upon a promissory note. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.  Affirmed.

*August Frieberg,* and *Bogue & Bogue,* for Appellant. -

The execution of the note sued on was ultra vires; it was in violation of express statutory and constitutional provisions of law, and the contract or note sued on is void.   Clark & Marshall on corporations, sections 224, 225, and 226; California National Bank v. Kennedy, 167 U. S. 362, 42 L. Ed. 198; Jacksonville, M. P. R. & Nav. Co. v. Hooper, 160 U. S. 514, 524, 530 (40 Law Ed. 515, 523, 525); State ex rel B. F. Farrell v. Corning State Savings Bank et. al. (Ia.), 113 N. W. 500; Scott v. Bankers Union of the World (Kans.), 85 Pac. 604; De La Vergne Refrigerating Co. v. German Savings Institution, 175 U. S. 40, 44 L. Ed., 65; Crane v. Edegard (N. D.), 96 N. W. 326; President and Trustees of the Village of Kilburn City v. Southern Wisconsin Power Co. (Wis.), 135 N. W. 499.

The charter of the defendant corporation does not permit it to purchase telephone plants, but by implication forbids such purchases; Section 491, Sutherland on Statutory Construction, Second Edition; Lee et. al. v. Town of Mellette et. al. (S. D.), 90 N. W. 185; Geo. W. Thomas v. West Jersey R. R. Co., 101 U. S. 71, 25 L. Ed. 950; Samuel Pearce v. Madison & Indianapolis R. R. Co. and Peru & Indianapolis R. R. Co. (62 U. S. 441), 16 L. Ed., 184; Central Transportation Co. v. Pullman Palace Car Co., 35 L. Ed. 55 (139 U. S. 24); California National Bank v. Kennedy (167 U. S. 362), 42 L. E. 198; McCormick v. Market Nat. Bank, 162 Ill. 100, 44 N. E. 38, 165 U. S. 538, 41 L. Ed. 817, 17 Sup. Ct. Rep. 433; Toleman v. N. M. & Dak. Mica Co., 4 Dak., 4; Dartmouth College v. Woodward, 4 Wheat. 636.

The board of directors did not have power to enter into

such a contract was entered into with the plaintiff. Section 434, Civil Code.

There is no evidence to show what was the amount of the subscribed capital stock; hence the contract was void in toto. Section 436, Civil Code.

Notes given in a transaction foreign to the purpose for which the corporation was created are void. Richmond Guano Co. v. Farmers' Cotton Seed Oil Milling Co. (C. C. A.), 126 F. 712; Metropolitan Stock Exchange v. Lyndonville National Bank, 76 Vt. 303, 57 Atl. 101; Fidelity Ins. Co. v. German Savings Bank, 103 N. W. 958; See 98 N. Y. Supp. 1082.

The doctrine of ratification has no application. Sec. 1668-69-70 and 1671, Revised Civil Code; Jewell & Co. v. State, 8 S. D. 531; Jewell v. State, 5 S. D. 623; Jewell v. State, 56 N. W. 113; Fargo v. Croon, 9 S. D. 646; Nichols v. Brumm, 5 Dak. 34; Dobbs v. Atlas Elevator Co., 117 N. W. 128; Blood v. La Serene Land & Water Co., 113 Cal. 221, 45 Pac. 252.

*French & Orvis,* for Respondent.

It is of no importance whether stock had actually been issued on December 27, 1906, at the time the first stock-holders' meeting was held, because those who had subscribed for capital stock were stockholders with the legal right to attend and participate in the proceedings of the first stockholders' meeting. Waukon & M. R. Co. v. Dwyer, 49 Ia. 121; Hill v. Glasgow R. Co. 41 Fed. 610; Instone v. Frankfort Bridge Company, 5 Ky. 576; Holland v. Duluth Iron-Mining & Development Co. (Minn.) 68 N. W. 50; Biscoe v. Tucker, 11 Ark. 145; State v. Harris, 3 Ark. 570, 36 Am. Dec. 460.

Where a private corporation has entered into a contract in excess of its granted powers and has received the benefits of the contract, and an action is brought against it to enforce the obligation, it is estopped from setting up the defense that it had no power to make it. 5 Thomp. on Corporations, Section 6016, 6017, 6018, Cyc. 1157, 1159, 1161, and cases there cited.

Defendant corporation had the right to own telephone exchanges and lines; it must have had the right to purchase them. Subdivision 4, Sec. 427, Revised Civil Code.

POLLEY, J. This action is brought for the recovery of the balance due on a promissory note. It is alleged in plaintiff's com-

plaint that the defendant executed and delivered to plaintiff the note in question on or about the first day of January, 1907, whereby it promised and agreed to pay plaintiff $15,000, with interest thereon at 7 per cent. per annum, five years from date, and that there is a balance still due to plaintiff of $7,865.26 and interest.

It appears, from the evidence in the record, that the defendant was incorporated shortly before the execution of the note in question, and that the purpose for which it was organized was to: "Build, own, control, maintain, repair, improve and extend telephone exchanges and telephone lines, and to do all lawful acts in maintaining, promoting and carrying on the said business." That, immediately after its organization, defendant purchased from plaintiff a certain telephone exchange, known as the Centerville Telephone Exchange, with its lines and other accessories, together with certain franchises, for which it gave to plaintiff 5000 shares of its capital stock and the note set out in plaintiff's complaint. Defendant immediately took over the telephone property and has been in possession of, and has operated, the same ever since. It also appears from the record that the directors of the defendant company, at the same meeting at which they purchased plaintiff's telephone plant, purchased the telephone property of another company, known as the Rural Telephone Company. In fact, it is apparent that the defendant company was organized for the purpose, and with the intent, of taking over and consolidating these two telephone properties and operating them as one concern under a single management. Defendant made a payment of $2,500 on the note in question on the day of its execution, and thereafter made partial payments and paid interest thereon, down to and including the first day of January, 1911.

Defendant, by its amended answer, in addition to a general denial, alleged that, at the time the note was executed and delivered to plaintiff, no capital stock had ever been issued; that no stockholders' meeting had ever been held; that no officers had ever been elected; that no person had ever been authorized to execute or deliver said note; that there was no consideration for the execution and delivery thereof; and that the payments that had been made thereon had been made by the treasurer of the company without any authority so to do, and without the knowledge, acquiescence or consent of the defendant. Defendant then set up a

counterclaim, in which it demanded, in addition to the dismissal of plaintiff's complaint, judgment against plaintiff for all the various sums—both principal and interest—that had been paid on the note, together with interest thereon from the dates of the respective payments; and all this, too, without any suggestion that plaintiff's telephone plant be restored to him or that he be in any wise compensated for its use during the five or six years defendant had been operating it, and without any allegation of fraud or misrepresentation on the part of the plaintiff or that the telephone property was not worth the full amount the defendant had agreed to pay for it.

[1] In response to appellant's contention that, at the time of the execution of the note, there were no stockholders and, consequently could be no one with authority to execute the same, we may say that, in the first place, there is no competent evidence in the record showing just when the first stock was issued; and, in the second place, it by no means necessarily follows that this transaction whereby the company purchased the telephone plant and executed the note in question, could not have been legally entered into before any stock had been issued. It is plain, from the record, that various parties who took part in this transaction had subscribed for stock and were entitled to stock at this time. They assumed that they were stockholders and were treated as such. Portions of the corporate records were admitted in evidence. From these, it appears that at least one "stockholders' meeting" had been held prior to the execution of the note. This record was not impeached, and we hold that, for the purpose of this case, these parties were entitled to exercise the authority of stockholders even though no certificate of stock had been issued. It has been repeatedly held that: "A subscriber to stock becomes a stockholder, by virtue of the subscription, in the absence of a provision requiring a payment as a condition of membership; and that, too, without the issuance of any certificate of stock." Waukon & M. R. Co. v. Dwyer, 49 Iowa, 121 citing Chester Glass Co. v. Dewey, 16 Mass. 94, 8 Am. Dec. 128; Spear v. Crawford, 14 Wend. (N. Y.) 20, 28 Am. Dec. 513; Vawter v. Ohio & M. R. Co. 14 Ind. 174. See, also, Hill v. Glasgow R. Co. (C. C.) 41 Fed. 610; Instone v. Frankfort B. Co., 5 Ky. (2 Bibb) 576, 5 Am. Dec. 638; Holland

v. Duluth & I. M. D. Co., 65 Minn. 324, 68 N. W. 50, 69 Am. St. Rep. 480.

[2] It is also contended by appellant that the purchase of respondent's telephone property was an act wholly beyond the corporate powers of appellant; that appellant was authorized to "build, own, control," etc., telephone lines, but not to *purchase* lines already constructed; and, therefore, respondent cannot recover. It is true that private corporations cannot bind themselves by contracts wholly beyond the scope of their corporate power, and, in a proper case, the corporation may set up its want of corporate power in a suit for the enforcement of such a contract. But, in a case where the corporation has accepted and retained the benefits of the contract, as was done by appellant in this case, in order to avail itself of this defense, it is incumbent upon the corporation not only to show that the act in question is not within the enumerated powers of the corporation but that it is wholly beyond the scope of the purpose for which it was chartered. This the appellant has failed to do. The building of telephone lines alone is not the purpose for which it was chartered, but to own and operate them as well; and, in view of the general purpose for which the company was chartered, the power to own implies the power to purchase. The act in question is within the power conferred upon every corporation by the provisions of § 427 Rev. Civ. Code.

Appellant's assignments presenting the other defenses raised by its amended answer have all been examined; but, after such examination, we do not feel that they merit discussion in detail. It may be that some of the proceedings of the defendant company leading up to the execution of the note were informal, and there may have been some irregularities, but it appears from the minutes of the meeting of the directors of the defendant company, held at about the time of the execution of the note, that the board, by a unanimous vote, purchased from plaintiff the said telephone properties and franchises, and, by a unanimous vote, directed and authorized the president and secretary of the board to make and deliver to plaintiff the note in question for $15,000, and also to deliver to him $5,000 of the capital stock of the company in payment for the telephone property.

[3] These proceedings on the part of the board, unimpeached, and unquestioned for a period of more than five years, tend very strongly to prove that the action of the board in the execution of the note, and of the treasurer in making payments thereon, was fully authorized; but, if the board had acted without authority in making the purchase of the telephone plant and executing and delivering the company's note in part payment therefor, the retention and use of the telephone property for so long a period of time would amount to a ratification of the contract, and the plaintiff was entitled to judgment. Errors, if any, occurring at the trial could not have prejudiced appellant, and the judgment and order appealed from are affirmed.